**IN THE
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

No. 25-2487

_____

TIMOFEY V and ANO DIALOG,

*Plaintiff-Appellants*,

v.

UNITED STATES OF AMERICA

*Defendant-Appellee.*

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania, No. 2:24-cv-06862
Before the Honorable Wendy Beetlestone

_____

**BRIEF FOR APPELLANTS
TIMOFEY V and ANO DIALOG**

_____

Dennis E. Boyle
Boyle & Jasari LLP
1050 Connecticut Ave, NW
Suite 500
Washington, DC 20036
dboyle@boylejasari.com
Telephone: (771) 217-2400

*Counsel for Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................. ii

TABLE OF AUTHORITIES ....................................................................... iv

JURISDICTIONAL STATEMENT ................................................................1

STATEMENT OF RELATED CASES AND PROCEEDINGS .............................1

STATEMENT OF THE CASE........................................................................2

    A.    Pertinent Procedural History .........................................................2

    B.    Statement of Facts ......................................................................2

SUMMARY OF THE ARGUMENT ................................................................4

ARGUMENT .............................................................................................5

    A.    Standard of Review .....................................................................5

    B.    Appellants are Lawfully Entitled to Own and Possess the Website Domain ..................................................................................................7

    C.    IEEPA and the Constitution protect "free speech" .....................11

    D.    The District Court Failed to Conduct a Hearing .........................16

CONCLUSION.........................................................................................18

CERTIFICATE OF BAR MEMBERSHIP.......................................................19

CERTIFICATE OF COMPLIANCE...............................................................20

CERTIFICATE OF SERVICE ...................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Al Haramain Islamic Foundation v. Dept. of Treasury*, 686 F.3d 965 (9th Cir. 2012) ................................................................. 8, 9, 17

*Can v. United States*, 820 F. Supp. 106 (S.D.N.Y. 1993) ........................................11

*Chaim v. United States,* 692 F.Supp.2d 461 (D.N.J. 2010) ......................................6

*D.C. Precision Inc. v. U.S.,* 73 F.Supp.2d 338 (S.D.N.Y. 1999) ............................11

*Gulf Coast Pharm. Plus v. United States*, 2023 WL 3099873 (S.D. Miss. Apr. 26, 2023) ..............................................................................6

*Holy Land Found. for Relief and Dev. v. Ashcroft*, 219 F. Supp. 2d 57 (D.D.C. 2002) ................................................................................11

*IPT Co., Inc. v. U.S. Dept. of Treas.*, No. 92 CIV. 5542 (JFK), 1994 WL 613371 (S.D.N.Y. Nov. 4, 1994) ........................................................11

*Kalantari v. NITV, Inc.*, 352 F.3d 1202 (9th Cir. 2003) ..........................................12

*Lindell v. United States,* 82 F.4th 614 (8th Cir. 2023) ...............................................6

*Matter of Ninety-One Thousand Dollars in U.S. Currency*, 715 F. Supp. 423 (D.R.I. 1989) ..........................................................................6

*Multiactiva de Empleados de Distribuidores de Drogas v. Newcomb,* Civ. No. 98–0949 (D.D.C. Mar 29, 1999) ...............................................11

*Richey v. Smith.* 515 F.2d 1239 (5th Cir. 1975) .......................................................6

*See U.S. v. Rodriguez-Aguirre,* 264 F.3d 1195 (10th Cir. 2001)...............................9

*Soldal v. Cook County, Ill.*, 506 U.S. 56 (1992) .......................................................10

*Trump v. United States,* 54 F.4th 689 (11th Cir. 2022) ...........................................6

*United States v. $6,999,925.00 of Funds Associated with Velmur Mgmt. Pte. Ltd.*,

    368 F. Supp.3d 10 (D.D.C. 2019)..........................................................................7

*United States v. $8,850*, 461 U.S. 555 (1983) ...........................................................8

*United States v. Alvarez*, 567 U.S. 709 (2012) .......................................................15

*United States v. Amirnazmi*, 645 F.3d 564 (3d Cir. 2011)............................... 11, 12

*United States v. Bennett*, 423 F.3d 271 (3d Cir. 2005) .............................................5

*United States v. Chambers*, 192 F.3d 374 (3d Cir. 1999)...................................5, 16

*United States v. Contents of Accounts Nos. 3034504504 and 144–07143,* 971 F.2d

    974 (3d Cir. 1992) ................................................................................................7

*United States v. Dean,* 100 F.3d 19 (5th Cir. 1996) ...............................................16

*United States v. Hess,* 982 F.2d 181 (6th Cir. 1992) ....................................... 16, 17

*United States v. Kama,* 394 F.3d 1236 (9th Cir. 2005) ............................................6

*United States v. Pitts,* 639 F. App'x 105 (3d Cir. 2016) ...........................................5

*Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)....................7

**Statutes**

21 U.S.C. § 853 .........................................................................................................1

28 U.S.C. § 1291 .......................................................................................................1

3 U.S.C. § 301 ...................................................................................2

31 C.F.R. § 544.201 ...........................................................................8

31 C.F.R. § 587.201 ...........................................................................9

31 C.F.R. Part 587............................................................................8

50 U.S.C. § 1601 ...............................................................................2

50 U.S.C. § 1701 ...............................................................................2

50 U.S.C. § 1702 ....................................................................... 12, 13

8 U.S.C. § 1182(f).............................................................................2

## Other Authorities

86 Fed. Reg. 20249 .........................................................................13

Fed. R. Crim. P. 41(e) advisory committee's note to 1989 amendment .................17

H.R. Conf. Rep. No. 103-482 ...........................................................13

## Rules

Federal Rule of Civil Procedure 12 ...........................................5

Federal Rule of Criminal Procedure 41(g) ........................ 1, 4, 5, 6, 9, 16

Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure..............20

Third Circuit Local Appellate Rule 28.3 ...................................19

## JURISDICTIONAL STATEMENT

This is an appeal from a final order of the district court (the Honorable Wendy Beetlestone) granting Defendant-Appellee's motion to dismiss, entered on June 4, 2025. The district court possessed subject matter jurisdiction pursuant to 21 U.S.C. § 853(l). A timely notice of appeal having been filed, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

Whether the District court erred in denying Appellants' petition for return of an internet domain which was seized by the Federal Bureau of Investigation, pursuant to Federal Rule of Criminal Procedure 41(g).

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not previously been before the Court of Appeals for the Third Circuit ("Third Circuit") and there are no related cases on appeal before the Third Circuit.

# STATEMENT OF THE CASE

## A.    Pertinent Procedural History

Appellants, Timofey V and Ano Dialog, filed this action on December 26, 2024, against the United States Department of Justice. In their petition, Appellants alleged that the internet domain, "waronfakes.com" was unlawfully seized by the Federal Bureau of Investigation and requested the immediate release of said domain. On February 28, 2025, the Government filed an opposition and a motion to dismiss the petition, which the parties fully briefed. JA383-JA730. The district court granted the Government's motion, on June 4, 2025. JA731. On August 1, 2025, Appellants filed their notice of appeal of the District Court's order. JA1.

## B.    Statement of Facts

On April 15, 2021, President Joseph R. Biden, Jr. issued Executive Order 14024 pursuant to the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq*., the National Emergencies Act, 50 U.S.C. § 1601 *et seq*., Section 212(f) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1182(f), and 3 U.S.C. § 301. Finding "that specified harmful foreign activities of the Government of the Russian Federation ... constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States[,]" the President invoked his emergency powers to "[a]ll property and interests in property that are in the United States" belonging to any "political subdivision, agency, or instrumentality of the Government of the Russian Federation" or "owned

or controlled by ... the Government of the Russian Federation" from being "transferred, paid, exported, withdrawn, or otherwise dealt in[.]" Exec. Order No. 14024, Blocking Property With Respect To Specified Harmful Foreign Activities of the Government of the Russian Federation, 86 Fed. Reg. 20249–50 (Apr. 15, 2021) ("Executive Order 14024").

On September 4, 2024, the Department of Justice issued a press release captioned "*Justice Department Disrupts Covert Russian Government-Sponsored Foreign Malign Influence Operation Targeting Audiences in the United States and Elsewhere*" announcing the seizure of 32 internet domains allegedly used in Russian government-directed "malign influence campaigns," collectively referred to as "*Doppelgänger.*" JA47.

In accordance with the press release, the district court issued a warrant for the government's seizure of the website domain, waronfakes.com, which was purchased and owned by Appellant Timofey V and registered with VeriSign Global Registry Services, a U.S. company located in Reston, Virginia. JA393, JA10, JA99, JA364, JA394. On August 30, 2024, the government seized the website domain. JA393. Five days later, on September 4, 2024, the Office of Foreign Assets Control ("OFAC") of the U.S. Treasury Department announced it was adding Appellant Ano Dialog to its list of Specially Designated Nationals ("SDNs"), pursuant to Executive Order

14024.[1] JA394. Appellant Timofey V was not designated as an SDN. JA707. Furthermore, since the seizure of the website domain in August of 2024—13 months ago—, Appellant Timofey V has not been charged with a criminal offense. Ano Dialog is a Russian nonprofit organization focused on internal political matters within Russia which are of interest to Russian citizens. JA375-JA377. The government provided no evidence that Appellants engaged in any activity specified by Executive Order 14024.

## SUMMARY OF THE ARGUMENT

The District Court erred in granting the Government's motion to dismiss Appellants' petition. Specifically, the District Court erred in finding that Appellants were unable to lawfully control or use the domain name in question and that, therefore, they cannot establish their lawful entitlement to it pursuant to Federal Rule of Criminal Procedure 41(g). The District Court failed to consider that a seizure of the website domain in this matter infringes upon the Appellants' rights under the U.S. Constitution. Finally, the District Court failed to conduct a hearing and denied the Appellants' petition without considering all pertinent claims and defenses.

For these reasons, and as discussed in greater detail below, the Court should reverse the District Court's order.

---

[1] *See* https://home.treasury.gov/news/press-releases/jy2559 (last accessed: October 7, 2025).

# ARGUMENT

## A.    Standard of Review

The Government moved to dismiss Appellants' petition, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that Appellants were not lawfully entitled to possession of the seized website domain and because its possession of the website domain was reasonable. JA393.

This Court reviews the District Court's decision to exercise its equitable jurisdiction for abuse of discretion. *See United States v. Chambers*, 192 F.3d 374, 376 (3d Cir. 1999). Attendant questions of law are reviewed *de novo*. *United States v. Bennett*, 423 F.3d 271, 274 (3d Cir. 2005).

Federal Rule of Criminal Procedure 41(g) allows "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property [to] move for the property's return . . . . If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings." Fed. R. Crim. P. 41(g). The rule also provides that "[t]he court must receive evidence on any factual issue necessary to decide the motion." *Ibid*. "A Rule 41(g) motion for the return of property is an independent civil action for equitable relief." *United States v. Pitts,* 639 F. App'x 105, 107 (3d Cir. 2016). "Where a Rule 41(g) petition is made by a party against whom no criminal charges have been brought, such a motion is in fact a petition that

the Court invoke its civil equitable jurisdiction." *Gulf Coast Pharm. Plus v. United States*, 2023 WL 3099873, at *3 (S.D. Miss. Apr. 26, 2023); *Matter of Ninety-One Thousand Dollars in U.S. Currency*, 715 F. Supp. 423, 427 (D.R.I. 1989) ("[F]ederal courts have variously found the authority to hear pre-indictment motions for return of property not only in the statutory grant of jurisdiction embodied in Rule 41(e)(2) but also in the longstanding, non-statutory doctrine of equitable or 'anomalous' jurisdiction . . . .").

District courts are guided by the test set out by the Fifth Circuit in *Richey v. Smith.* 515 F.2d 1239, 1243 (5th Cir. 1975). *See e.g., Lindell v. United States,* 82 F.4th 614, 619 (8th Cir. 2023); *Trump v. United States,* 54 F.4th 689, 697 (11th Cir. 2022); *United States v. Kama,* 394 F.3d 1236,1238 (9th Cir. 2005). *Richey* lists four factors to be considered in deciding whether to exercise its equitable jurisdiction over a Rule 41(g) motion. *Richey,* 515 F.2d 1239 at 1243. These factors are:

> (1) whether the Government displayed a callous disregard for the constitutional rights of the movant;
>
> (2) whether the movant has an individual interest in and need for the property he wants returned;
>
> (3) whether the movant would be irreparably injured by denying return of the property; and
>
> (4) whether the movant has an adequate remedy at law.

*Ibid.; see also, Chaim v. United States,* 692 F.Supp.2d 461, 467 (D.N.J. 2010).

**B.  Appellants are Lawfully Entitled to Own and Possess the Website Domain.**

In its ruling, the District Court determined that "under the Executive Order and subsequent SDN List designation, Petitioners' control of 'waronfakes.com' is 'blocked' and 'effectively frozen,' ... meaning that they are legally prohibited from gaining control over, or using, it absent a license from OFAC—which they have not, to date, obtained." JA734.

As it relates to Appellant Timofey V, he had never been designated as an SDN, and he was the rightful owner of the website domain. JA10, JA99, JA364, JA707. He purchased the domain name, on March 1, 2022, paid for it with a Russian bank card which belonged to him, and he used his own passport for the purchase. JA10, JA99, JA364, JA707. As such, the seizure of the website domain necessarily injured him. *See United States v. Contents of Accounts Nos. 3034504504 and 144–07143,* 971 F.2d 974, 985 (3d Cir. 1992) (citing *Warth v. Seldin,* 422 U.S. 490, 498–502, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ("an owner or possessor of property that has been seized necessarily suffers an injury that can be redressed at least in part by the return of the seized property").

The District Court further referenced *United States v. $6,999,925.00 of Funds Associated with Velmur Mgmt. Pte. Ltd.*, 368 F. Supp.3d 10 (D.D.C. 2019) in its ruling in which the U.S. District Court for the District of Columbia held that "Department of Treasury regulations bar the provision of funds, goods, or services

7

by, to, or for the benefit of any person designated as an SDN, unless OFAC licenses the transactions". *Id.*, 368 F. Supp.3d at 15, citing 31 C.F.R. § 544.201(b). However, 31 C.F.R. § 544.201(b) simply sets forth prohibited transactions involving blocked property; it does not prescribe the seizure of property lawfully owned by persons who were not designated as an SDN.

With regard to Appellant Ano Dialog, at the time of the seizure, on August 30, 2024, Ano Dialog had not yet been designated as an SDN. JA711. Its designation as an SDN did not occur until five days later, on September 4, 2024. JA394. Courts have consistently held that government actions must be evaluated based on circumstances at the time they occurred and cannot be retroactively justified by subsequent events. *See, e.g., United States v. $8,850*, 461 U.S. 555, 563 (1983); *Al Haramain Islamic Foundation v. Dept. of Treasury*, 686 F.3d 965, 980 (9th Cir. 2012) (actions preceding designation cannot be retroactively justified by subsequent designation).

Furthermore, OFAC's "Russian Harmful Foreign Activities Sanctions Regulations," 31 C.F.R. Part 587, are clear in that "[t]he names of persons designated or identified as blocked pursuant to [Executive Order] 14024, or listed in, or designated or identified as blocked pursuant to, any further Executive orders issued pursuant to the national emergency declared therein, whose property and interests in property therefore are blocked pursuant to this section, are published in the Federal

Register and incorporated into OFAC's [SDN List]". 31 C.F.R. § 587.201, Note 1;

*see also* JA431 ("Persons designated pursuant to E.O. 14024 are identified on the

SDN List").

Neither Appellant Timofey V nor Appellant Ano Dialog were identified on

the SDN List on August 30, 2024, when the seizure occurred and the Government's

subsequent designation of Appellant Ano Dialog on the SDN List cannot justify the

seizure.[2] *See Al Haramain Islamic Foundation*, 686 F.3d at 980. As such, Appellants

had a "colorable ownership, possessory or security interest in at least a portion" of

the seized website domain, pursuant to Federal Rule of Criminal Procedure 41(g).

*See U.S. v. Rodriguez-Aguirre,* 264 F.3d 1195, 1204 (10th Cir. 2001).

Furthermore, in its ruling, the District Court omits any evaluation of Appellant

Ano Dialog's status relating to the SDN List prior to September 4, 2024, and simply

concludes that *both* Appellants' "subsequent SDN List designation ... legally

prohibited [them] from gaining control over, or using, it absent a license from

OFAC". JA734. As discussed above, Appellant Timofey V was never designated on

the SDN List. JA707. As it relates to Ano Dialog's subsequent designation, a

distinction between blocked property and seized property should have been, but was

not drawn by the District Court. As OFAC explains in its FAQ # 9, when property

---

[2] It is further notable that no criminal charges have been filed against either
Appellant, no forfeiture action has been initiated, and the seizure was conducted
thirteen months ago.

is "blocked" by operation of sanctions imposed under the International Emergency Economic Powers Act, the government does not take title to, possess, or move that property. Rather, "[t]itle to the blocked property remains with the [blocked person], but the exercise of powers and privileges normally associated with ownership is prohibited without authorization from OFAC." *OFAC Frequently Asked Questions*, https://home.treasury.gov/policy-issues/financial-sanctions/faqs/9. Conversely, a "seizure" occurs "when there is some meaningful interference with an individual's possessory interests in that property." *See Soldal v. Cook County, Ill.*, 506 U.S. 56, 61 (1992).

This distinction has significant practical implications. When a domain is merely blocked, its content remains accessible to users worldwide, including in the United States. The website continues to function normally with existing content remaining visible, and new content can still be added. Only certain transactions involving U.S. persons are prohibited. In contrast, when a domain is seized as waronfakes.com has been, all content becomes completely inaccessible, an FBI seizure banner is displayed, the owner loses all operational control, and the domain's essential communicative function is entirely eliminated. This extreme remedy effectively terminates all First Amendment activity associated with the domain rather than merely restricting certain transactions involving it.

Consistent with these considerations, courts have determined that the blocking of assets under sanctions programs does not constitute a seizure and is not tantamount to a forfeiture. *See Can v. United States*, 820 F. Supp. 106, 109 (S.D.N.Y. 1993) (noting that "[t]he blocking of the assets" does "not affect the interest, right or title to them which [plaintiffs] may possess"); *Holy Land Found. for Relief and Dev. v. Ashcroft*, 219 F. Supp. 2d 57, 78-79 (D.D.C. 2002) ("With respect to the freezing of [accounts] … blocking of this nature does not constitute a seizure."); *D.C. Precision Inc. v. U.S.,* 73 F.Supp.2d 338, 343 n. 1 (S.D.N.Y. 1999) (assets blocked by the government are not seized); *Multiactiva de Empleados de Distribudores de Drogas v. Newcomb,* Civ. No. 98–0949, slip op. at 13–14 (D.D.C. Mar 29, 1999) (blocking bars transactions but does not confiscate property and is not tantamount to a forfeiture); *IPT Co., Inc. v. U.S. Dept. of Treas.*, No. 92 CIV. 5542 (JFK), 1994 WL 613371 (S.D.N.Y. Nov. 4, 1994) (IEEPA blocking is a temporary freezing and title does not vest in the government).

The District Court erred in granting the Government's motion to dismiss.

## C. IEEPA and the Constitution protect "free speech"

Executive Order 14024, by its terms, was issued pursuant to the President's authority under IEEPA. Enacted in 1977, IEEPA is "the source of statutory authority for the Executive's exercise of emergency economic powers in response to peacetime crises." *United States v. Amirnazmi*, 645 F.3d 564, 572 (3d Cir. 2011).

While Congress, through IEEPA, conferred on the Executive substantial authority to confront national emergencies, it also took care to identify certain substantive limitations on the President's otherwise broad powers.

As originally enacted, IEEPA limited the President's authority to regulate "any postal, telegraphic, telephonic, or other personal communication, which does not involve a transfer of anything of value." 50 U.S.C. § 1702(b)(1). In 1988, Congress enacted the Berman Amendment, in response to "several seizures by the United States of shipments of magazines and books" from countries subject to trade embargoes, as well as "to the Treasury Department's restrictions on the permissible forms of payment for informational materials purchased from Cuba." *United States v. Amirnazmi*, 645 F.3d 564, 584 (3d Cir. 2011 (quoting *Kalantari v. NITV, Inc.*, 352 F.3d 1202, 1205 (9th Cir. 2003)). The Berman Amendment constrained the President's ability to regulate certain types of information and informational materials when relying on IEEPA to respond to a national emergency. *See ibid.* Further, the amendment "removed from the Executive's purview the authority to regulate or prohibit such transactions 'directly or indirectly.'" *Ibid.*

The President's IEEPA authority was further limited in 1994, when Congress, through the Free Trade in Ideas Act, expanded the Berman Amendment "to restrict the Executive from regulating transactions concerning informational materials

'regardless of format or medium of transmission.'" *Id.* at 585. This "informational

materials" exception to the President's IEEPA authority provides:

> The authority granted to the President by this section
> does not include the authority to regulate or prohibit,
> directly or indirectly ...
>
> (3) the importation from any country, or the exportation to
> any country, whether commercial or otherwise, regardless
> of format or medium of transmission, of any information
> or informational materials, including but not limited to,
> publications, films, posters, phonograph records,
> photographs, microfilms, microfiche, tapes, compact
> disks, CD ROMs, artworks, and news wire feeds.

*Id.* § 1702(b). The House Conference Report clarified that under the informational

materials exception, "no embargo may prohibit or restrict directly or indirectly the

import or export of information that is protected under the First Amendment to the

U.S. Constitution." H.R. Conf. Rep. No. 103-482, at 239 (1994), *reprinted in* 1994

U.S.C.C.A.N. 398, 483. To that end, the report notes that the exception was

"explicitly intended, by including the words 'directly or indirectly,' to have a broad

scope," and to "facilitate transactions and activities incident to the flow of

information and informational materials without regard to the type of information,

its format, or means of transmission." *Ibid.*

In April 2021, then-President Biden invoked, *inter alia*, IEEPA to issue

Executive Order 14024. *See* 86 Fed. Reg. 20249 (Apr. 15, 2021). As relevant here,

that order blocked "[a]ll property and interests in property that are in the United

States, that hereafter come within the United States, or that are or hereafter come within the possession or control of ... any person determined by the Secretary of Treasury" to have specified links to the Russian government or to play specified roles in the Russian economy. *Id.* at 20249–50. The order further authorized the Treasury Department "to take such actions, including the promulgation of rules and regulations, and to *employ all powers granted to the President by IEEPA*, as may be necessary to carry out the purposes of this order." *Id.* at 20252 (emphasis added).

Notably, and as set forth in detail above, restricting "information and informational materials" is *not* a power granted to the President by IEEPA. Nevertheless, the Government seized the website domain, waronfakes.com, pursuant to Executive Order 14024. The website domain in this matter contains news about current events. JA709. The Government itself acknowledged that the website publishes news articles. JA99.[3] In addition, although there is no specific example or allegation that waronfakes.com published "fake" news stories (as was alleged

---

[3] It should be noted that the Government relies on the Viginum report—a report published by French government agency, the Viginum Agency—for its assertion that Ano Dialog—not Timofey V—"has been accused of conducting online propaganda activities on behalf of the Russian State". JA99. The Viginum report itself relies on an article published by the news agency Meduza which, in 2022, received criticism for publishing misleading and biased news articles purportedly based on Kremlin-related "insider information". *See* https://www.proekt.media/en/narrative-en/kremlin-telegram-meduza-en/ (last accessed: October 7, 2025). Specifically, Meduza was accused of publishing unverified rumors and making dozens of political predictions of which only 10% had come true. *Ibid*.

against the other domains seized pursuant to the warrant), the Supreme Court has extended its protection of free speech even to false statements. *See United States v. Alvarez*, 567 U.S. 709, 723 (2012) (striking federal law criminalizing false statements about military valor, noting that upholding it "would endorse government authority to compile a list of subjects about which false statements are punishable ... Were the Court to hold that the interest in truthful discourse alone is sufficient to sustain a ban on speech, absent any evidence that the speech was used to gain a material advantage, it would give government a broad censorial power unprecedented in this Court's cases or in our constitutional tradition."). In any event, there is no doubt that the website domain in this matter published information and informational materials" and that the U.S. Constitution, the IEEPA and Executive Order 14024 do not grant the Government the power to seize it, as any regulation would be exempted by the Berman Amendment.

Furthermore, 31 C.F.R. § 587, General License No. 25, explicitly authorizes "all transactions ordinarily incident and necessary to the receipt or transmission of telecommunications involving the Russian Federation that are prohibited by the Russian Harmful Foreign Activities Sanctions Regulations, 31 CFR part 587", except for certain financial activity. *See also* 31 C.F.R. § 587, General License No. 25G (authorizing transactions related to telecommunications and certain internet-based communications). In this matter, the Government seized the website domain

on the basis of its publications, rather than any financial activity connected with said website domain. Therefore, not only are those publications protected by the First Amendment to the U.S. Constitution, but General License Nos. 25 and 25G explicitly authorize such publications.

The District Court erred in granting the Government's motion to dismiss.

## D. The District Court Failed to Conduct a Hearing

The District Court declined to exercise equitable jurisdiction in this matter and dismissed Appellants' petition without a hearing. Because there were disputed issues of fact necessary to the resolution of the motion the District Court should have conducted a hearing.

Federal Rule of Criminal Procedure 41(g) directs a district court to "receive evidence" on issues of fact necessary to dispose of a motion. *See also Chambers*, 192 F.3d at 378 (citing *United States v. Dean,* 100 F.3d 19, 21 (5th Cir. 1996); *United States v. Hess,* 982 F.2d 181, 186 (6th Cir. 1992) ("The District Court must hold an evidentiary hearing on any disputed issue of fact necessary to the resolution of the motion.").

In this matter, the District Court summarily concluded that Appellants were designated on the SDN List, that they could therefore not establish their lawful entitlement to the website domain pursuant to Rule 41(g), and hence denied Appellants' motion without an evidentiary hearing. JA733. The District Court did

not consider the merits of Appellants' arguments propounded in their petition or in briefing the Government's motion to dismiss and made no findings of fact regarding ownership of the website domain. JA733-734; *see, e.g., Hess*, 982 F.2d at 186 (finding it significant that no hearing was held regarding who was entitled to possession of certain documents, and the district court had failed to consider the merits of the moving party's arguments); Fed. R. Crim. P. 41(e) advisory committee's note to 1989 amendment ("[R]easonableness under all of the circumstances must be the test when a person seeks to obtain the return of property.").

Here, neither Appellant was designated on the SDN List at the time of the Government's seizure of the website domain—Appellant Timofey V, the owner of the website domain, has *never* been designated. JA711, JA707. Furthermore, Appellant Ano Dialog's subsequent designation, five days after the seizure, does not justify the Government's seizure. *See Al Haramain Islamic Foundation*, 686 F.3d at 980 (actions preceding designation cannot be retroactively justified by subsequent designation). The District Court, however, considered none of these factual issues and simply denied Appellants' petition by issuing conclusory findings in a footnote of its order. JA733-734.

The District Court in this matter held no hearing, took no evidence, and gave no indication that it ever had considered the merits of Appellants' petition despite

the fact that significant factual disputes were present. The District Court erred in granting the Government's motion to dismiss and its order should be reversed.

## CONCLUSION

For the foregoing reasons, Appellants Timofey V and Ano Dialog respectfully request that this Court reverse the District Court's order.

Respectfully submitted,

/s/ *Dennis E. Boyle*
Dennis E. Boyle
Boyle & Jasari
1050 Connecticut Ave. NW, Suite 500
Washington, D.C. 20036
dboyle@boylejasari.com
Telephone: (771) 217-2400

*Attorney for Appellants*

## CERTIFICATE OF BAR MEMBERSHIP

Pursuant to Third Circuit Local Appellate Rule 28.3(d), the undersigned counsel hereby certifies that I have been admitted before the bar of the United States Court of Appeals for the Third Circuit, and that I am a member in good standing of the Court.

*/s/ Dennis E. Boyle*
Dennis E. Boyle

*Attorney for Appellants*

# CERTIFICATE OF COMPLIANCE

I, Dennis E. Boyle, hereby certify that:

1.     This Brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 4075 words, excluding the parts of the brief exempted by Rule 32(f).

2.     This brief complies with the typeface requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

3.     The hard copy and the electronic copy of this brief are identical.

4.     The electronic copy of this brief has been virus scanned using Avast Antivirus version 25.9.10453a and no virus was detected.


*/s/ Dennis E. Boyle*
Dennis E. Boyle

*Attorney for Appellants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of October 2025, I electronically filed the foregoing with the Court using the CM/ECF system, which sent notification of such filing to all parties.

*/s/ Dennis E. Boyle*
Dennis E. Boyle

*Attorney for Appellants*