NO. 25-2487

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

TIMOFEY V and ANO DIALOG,
Plaintiffs-Appellants

v.

UNITED STATES OF AMERICA,
Defendant-Appellee

APPEAL FROM ORDER IN CASE NO. 2:24-CV-06862
IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRIEF FOR APPELLEE UNITED STATES OF AMERICA

JOHN A. EISENBERG
Assistant Attorney General
National Security Division

KYLE J. FINNEGAN
Trial Attorney
National Security Cyber Section

DAVID METCALF
United States Attorney

ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals

950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-4573

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT......................................................................1

    I.    Subject Matter Jurisdiction..............................................1

    II.   Appellate Jurisdiction .....................................................1

STATEMENT OF ISSUE .................................................................................. 2

STATEMENT OF THE CASE .......................................................................... 3

    I.    Procedural History ........................................................ 3

    II.   Statement of Facts ........................................................ 4

         A.    Background on the Domain Name
               System .................................................... 4

         B.    Appellants' Relationship to the Subject
               Domain.................................................... 5

         C.    Seizure of the Subject Domain......................... 6

         D.    Subsequent Sanctioning of Appellant
               ANO Dialog ........................................... 9

STATEMENT OF RELATED CASES............................................................10

SUMMARY OF ARGUMENT ........................................................................ 11

ARGUMENT ......................................................................................................13

    THE DISTRICT COURT CORRECTLY
    DENIED APPELLANTS' RULE 41(G)
    MOTION ..........................................................................................13

         A.    Appellants Lack Standing to Pursue a
               Rule 41(g) Claim...........................................14

1.   Appellants do not have a cognizable
     ownership or possessory interest in the
     Subject Domain ........................................................15

2.   Sanctions prohibit Appellants from lawfully
     possessing the Subject Domain............................. 20

3.   Appellants' claim is not redressable....................... 25

4.   No exceptions to the sanctions apply..................... 27

B.   The District Court Did Not Abuse Its Discretion
     in Declining to Exercise Its Equitable Authority............. 29

1.   The Government reasonably seized and
     retains the Subject Domain.....................................31

2.   The Richey factors weigh against exercising
     equitable authority ................................................. 36

C.   Remand for an Evidentiary Hearing Is
     Unnecessary .................................................................. 42

CONCLUSION ............................................................................. 44

# TABLE OF AUTHORITIES

## Cases

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury,*
   686 F.3d 965 (9th Cir. 2012) ............................................................ 24

*Chaim v. United States,*
   692 F. Supp. 2d 461 (D.N.J. 2010) .................................................. 37

*Const. Party of Pa. v. Aichele,*
   757 F.3d 347 (3d Cir. 2014) ............................................................. 25

*Diegelmann v. Yellen,*
   2024 WL 4880468 (D.D.C. 2024)........................................... 21, 22, 41

*Douglas v. City of Jeannette,*
   319 U.S. 157 (1943)............................................................................ 30

*Gov't of Virgin Islands v. Edwards,*
   903 F.2d 267 (3d Cir. 1990)............................................................... 31

*Harbor Healthcare Sys., L.P. v. United States,*
   5 F.4th 593 (5th Cir. 2021)................................................................ 39

*Humanitarian L. Project v. U.S. Treasury Dep't,*
   578 F.3d 1133 (9th Cir. 2009)............................................................ 39

*Hunsucker v. Phinney,*
   497 F.2d 29 (5th Cir. 1974) .............................................................. 30

*In re 309 Primrose Lane Hanover, Pa. 17331,*
   No. 1:05-MC-0151 (M.D. Pa. Aug. 13, 2007),
   *aff'd,* No. 07-3689, 2009 WL 762417 (3d Cir. 2009)......................... 33

*In re $67,470,*
   901 F.2d 1540 (11th Cir. 1990).......................................................... 30

*In re Search of 4801 Fyler Ave.,*
    879 F.2d 385 (8th Cir. 1989) ............................................................. 30

*Johnson v. United States,*
    971 F. Supp. 862 (D.N.J. 1997) ......................................................... 37

*Laurel Gardens, LLC v. Mckenna,*
    948 F.3d 105 (3d Cir. 2020) .............................................................. 14

*Lindy Bros. Builders, Inc. v. American Radiator*
*& Standard Sanitary Corp.,*
    540 F.2d 102 (3d Cir. 1976) .............................................................. 13

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ........................................................................... 14

*Manno v. Christie,*
    2008 WL 4058016 (D.N.J. Aug. 22, 2008) ....................................... 37

*Munoz-Valencia v. United States,*
    169 F. App'x 150 (3d Cir. 2006) ........................................................ 16

*Oddi v. Ford Motor Co.,*
    234 F.3d 136 (3d Cir. 2000) .............................................................. 13

*OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela,*
    2022 WL 611563 (D. Del. Mar. 2, 2022) .......................................... 25

*Patel v. United States,*
    2019 WL 4251269 (S.D. Fla. Sept. 9, 2019) ..................................... 40

*Peloro v. United States,*
    488 F.3d 163 (3d Cir. 2007) ...................................................... 1, 30, 42

*Phillips v. County of Allegheny,*
    515 F.3d 224 (3d Cir. 2008) .............................................................. 18

*Pub. Int. Rsch. Grp. of N.J., Inc. v. Magnesium Elektron, Inc.,*
    123 F.3d 111 (3d Cir. 1997) .............................................................. 14

*Ramsden v. United States,*
    2 F.3d 322 (9th Cir. 1993) ............................................................ 37, 40

*Richey v. Smith,*
    515 F.2d 1239 (5th Cir. 1975) ................................................. 12, 31, 37

*Smith v. United States,*
    590 F.2d 304 (9th Cir. 1979) ..............................................................15

*Stecyk v. Bell Helicopter Textron, Inc.,*
    295 F.3d 408 (3d Cir. 2002) ...............................................................13

*Stich v. United States,*
    730 F.2d 115 (3d Cir. 1984) ................................................................13

*Sulemane v. Mnuchin,*
    2019 WL 77428 (D.D.C. Jan. 2, 2019) ................................................41

*Trump v. United States,*
    54 F.4th 689 (11th Cir. 2022) ........................................................... 37

*United States v. $8,850 in U.S. Currency,*
    461 U.S. 555 (1983) ...................................................................... 35, 36

*United States v. $40,454 in U.S. Currency,*
    469 F. Supp. 1041 (W.D. Pa. 1979) ...............................................31, 35

*United States v. $515,060.42 in U.S. Currency,*
    152 F.3d 491 (6th Cir. 1998) ..............................................................15

*United States v. $6,999,925.00 of Funds Associated with
Velmur Mgmt. Pte Ltd,*
    368 F. Supp. 3d 10 (D.D.C. 2019) .......................................................21

*United States v. Approximately $16,500.00 in U.S. Currency,*
    113 F. Supp. 3d 776 (M.D. Pa. 2015) ................................................. 20

*United States v. Albinson,*
    356 F.3d 278 (3d Cir. 2004) .......................................................13, 26, 42

*United States v. Bein,*
    214 F.3d 408 (3d Cir. 2000) ...........................................................1, 26

*United States v. Chambers,*
    192 F.3d 374 (3d Cir. 1999)..................................................... 13, 15, 20

*United States v. Cooper,*
    485 F. App'x 411 (11th Cir. 2012) ..................................... 16, 17, 18, 20

*United States v. Dean,*
    80 F.3d 1535 (11th Cir. 1996) ............................................................ 30

*United States v. Dupree,*
    617 F.3d 724 (3d Cir. 2010) .............................................................. 27

*United States v. Felici,*
    208 F.3d 667 (8th Cir. 2000) ............................................................ 42

*United States v. Howell,*
    425 F.3d 971 (11th Cir. 2005) ...........................................................15

*United States v. Lamplugh,*
    956 F. Supp. 1204 (M.D. Pa. 1997) .................................................31, 33

*United States v. Nestor,*
    2025 WL 32814 (3d Cir. Jan. 6, 2025) ................................................14

*United States v. Premises Known as 608 Taylor Ave.,*
*Apt. 302, Pittsburgh, Pa.,*
    584 F.2d 1297 (3d Cir. 1978) ................................................. 30, 32, 33

*United States v. Raspino,*
    295 F. App'x 486 (3d Cir. 2008)..........................................................41

*United States v. Roberts,*
    322 F. App'x 175 (3d Cir. 2009)........................................................ 24

*United States v. Rodriguez-Aguirre,*
    264 F.3d 1195 (10th Cir. 2001) ..........................................................14

*United States v. Singleton,*
 867 F. Supp. 2d 564 (D. Del. 2012) .............................................32, 41

*United States v. Verdugo-Urquidez,*
 494 U.S. 259 (1990) ......................................................................... 38

*Zevallos v. Obama,*
 793 F.3d 106 (D.C. Cir. 2015) .......................................................21

## Statutes and Rules

18 U.S.C. § 1956(a)(2)(A) ...................................................................... 6

18 U.S.C. § 981(b) ..................................................................................... 6

18 U.S.C. § 982(b)(2) ............................................................................... 6

18 U.S.C. § 2323(b)(2) ............................................................................. 6

21 U.S.C. § 853(f) ...................................................................................... 6

21 U.S.C. § 853(n) ....................................................................................41

28 U.S.C. § 853(l) ........................................................................................1

28 U.S.C. § 1291 ..........................................................................................1

28 U.S.C. § 1331 ..........................................................................................1

50 U.S.C. § 1701 ......................................................................................... 6

50 U.S.C. § 1702(b)(3) ........................................................................... 28

50 U.S.C. § 1705(a) ................................................................................... 8

Fed. R. Crim. P. 41 ...........................................................................passim

31 C.F.R. § 587.201 .............................................................................8, 26

31 C.F.R. § 587.201(a) ........................................................7

31 C.F.R. § 587.202(a) ........................................... 8, 24, 25

31 C.F.R. § 587.202(c) ......................................................21

31 C.F.R. § 587.202(f) ..................................................... 26

## Other Authorities

Executive Order 14024 ...........................................7, 21, 28

# JURISDICTIONAL STATEMENT

## I. Subject Matter Jurisdiction

The district court possessed subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because a motion under Federal Rule of Criminal Procedure 41(g) is "treated as a civil proceeding for equitable relief." *Peloro v. United States*, 488 F.3d 163, 172 (3d Cir. 2007) (quoting *United States v. Bein*, 214 F.3d 408, 411 (3d Cir. 2000)).[1]

## II. Appellate Jurisdiction

Based upon the timely filing of a notice of appeal from the district court's order on June 4, 2025, this Court has jurisdiction over this matter under 28 U.S.C. § 1291.

---

[1] Appellants' brief cites 28 U.S.C. § 853(l) as the basis for subject matter jurisdiction. However, that statute concerns orders of forfeiture following a criminal conviction. Here, criminal charges have not yet been filed.

**STATEMENT OF ISSUE**

Did the district court correctly denied Appellants' motion under Federal Rule of Criminal Procedure 41(g) for the return of an Internet domain name that the Government seized from a third party, where one of the Appellants is subject to U.S. sanctions?

## STATEMENT OF THE CASE

## I. Procedural History

On August 30, 2024, the Government obtained a warrant to seize 32 Internet domain names as property involved in a scheme to violate U.S. money laundering laws, and as property used or intended to be used to commit or facilitate criminal trademark infringement (the "Seizure Warrant"). JA47-347. The specific domain at issue in this case, waronfakes.com (the "Subject Domain"), was seized under the money laundering theory. JA98-99. The Government seized the Subject Domain from Verisign Global Registry Services ("Verisign"), a U.S. company. JA120.

On December 26, 2024, Appellants Timofey V and ANO Dialog filed a petition under Federal Rule of Criminal Procedure 41(g) for the return of the Subject Domain. JA6-45. On February 28, 2025, the Government filed an opposition and motion to dismiss the petition. JA385-701. On March 21, 2025, Appellants filed a response to the Government's motion to dismiss. JA702-732.

On June 4, 2025, the District Court granted the Government's motion to dismiss. JA733-734. On August 1, 2025, Appellants filed a notice of appeal. JA4.

## II. Statement of Facts

## A.     Background on the Domain Name System.

The Domain Name System (DNS) is essentially a phonebook for the Internet, associating "domain names" (sometimes called "website names") with the computer(s) hosting the contents of websites and other Internet resources. *See* JA51 at ¶¶ 11-12. A domain name—by itself—does not host any content. That content is hosted on separate computers, each of which has an Internet Protocol (IP) address that identifies it and allows it to communicate with other computers on the Internet. *See id.* at ¶ 11; JA52 at ¶ 16. DNS tracks which domain names are associated with which IP addresses, allowing an individual to enter a website name in his Internet browser and receive content back from the computer(s) hosting the corresponding website. *See* JA51 at ¶¶ 12-13.

Three types of entities and individuals comprise the core of the DNS: registries, registrars, and registrants.

- A domain name "registry" is an entity that manages top-level domains (such as ".com" or ".org"), including by setting usage rules and working with *registrars* to sell domain names to the public. For example, Verisign is the registry for the ".com" and ".net" top-level domains. JA52 at ¶ 15.

- A "registrar" is an entity that registers and sells domain names and has generally been accredited by the Internet Corporation for Assigned Names and Numbers (ICANN) or a national country code top-level domain (such as ".uk" or ".ca"). *Registrars* act as

intermediaries between *registries* and *registrants*. *Registrars* typically maintain customer and billing information about the *registrants* who used their domain name registration services. JA51 at ¶ 14.

- A "registrant" is the person or entity that holds the right to use a specific domain name sold by a *registrar*. Most *registrars* provide online interfaces that can be used by *registrants* to administer their domain names, including to designate or change the IP address to which their domain names resolves. For example, a *registrant* will typically "point" their domain name to the IP address of the computer server where the *registrant's* website is hosted. JA52 at ¶ 16.

Several international organizations, including ICANN, help to coordinate governance of the DNS. *See generally Welcome to ICANN!*, Internet Corp. for Assigned Names and Nos., https://www.icann.org/resources/pages/welcome-2012-02-25-en (last visited Jan. 9, 2026).

## B.    Appellants' Relationship to the Subject Domain.

On March 1, 2022, Appellant Timofey V registered the Subject Domain ("waronfakes.com") for a one-year period. JA10 at ¶ 26; JA356 at ¶¶ 3-4; JA364. Appellant Timofey V registered the Subject Domain through "Reg.Ru," a registrar based in Russia, JA364, which obtained the domain from Verisign, the registry based in Reston, Virginia, JA99 at ¶ 118.

Appellant Timofey V is employed by Appellant ANO Dialog. JA9 at ¶ 24. The content that appeared on the website associated with the Subject Domain was created by employees of ANO Dialog. JA12 at ¶ 44. The director of ANO Dialog is Vladimir Tabak ("Tabak"). JA368 at ¶ 1.

## C.    Seizure of the Subject Domain.

On August 30, 2024, the Government obtained the Seizure Warrant pursuant to 18 U.S.C. §§ 981(b), 982(b)(2), 2323(b)(2) and 21 U.S.C. § 853(f), allowing it to seize the Subject Domain in relevant part as property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956(a)(2)(A) (international promotional money laundering) and 1956(h) (conspiracy to commit same), with the intent of promoting the carrying on of violations of the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.* ("IEEPA"). JA47-347.

The Subject Domain was part of a network of domains that promoted Russian disinformation efforts on behalf of at least one sanctioned entity. JA47 at ¶ 1. Since at least 2022, under the direction and control of the Russian Presidential Administration—in particular, First Deputy Chief of Staff of the Presidential Executive Office, Sergei Kiriyenko ("Kiriyenko")— Russian companies, including Appellant ANO Dialog, purchased and used various Internet domains touching the United States to engage in foreign malign influence campaigns. *Id.* These campaigns, colloquially referred to as "Doppelganger," were designed to reduce international support for Ukraine, bolster pro-Russian policies, and influence voters in U.S. and foreign elections by posing as citizens of those countries, impersonating

legitimate news outlets, and peddling Russian government propaganda under the guise of independent media brands. *Id.*; JA60. Appellants and Tabak—acting under Kiriyenko's direction and control—disseminated Russian propaganda using, among other things, the Subject Domain. JA63, 67-70, & 98-99.

Kiriyenko, however, was a sanctioned entity at the time the Doppelganger domains were obtained or used. On March 2, 2021, the United States Department of the Treasury's Office of Foreign Assets Control (OFAC), exercising its authority under IEEPA, imposed sanctions on Kiriyenko by adding him to the Specially Designated Nationals and Blocked Persons List (the "SDN List").[2] In April 2021, the President issued Executive Order 14024, which declared a national emergency with respect to efforts of the Russian Government to, among other things, "undermine the conduct of free and fair democratic elections and democratic institutions in the United States and its allies and partners." On March 1, 2022, OFAC promulgated a final rule under which "[a]ll transactions prohibited pursuant to Executive Order (E.O.) 14024 of April 15, 2021 are prohibited." 31 C.F.R. § 587.201(a). The regulations block the transfer or

---

[2] This paragraph summarizes the sanctions most relevant to this appeal. A detailed history of the sanctions is provided in the affidavit in support of the Seizure Warrant. *See* JA54-59.

dealing of all property and interests in property of any person designated on the SDN List and provide that "[a]ny transfer after the effective date that is in violation of any provision of this part or of any regulation . . . and that involves any property or interest in property blocked pursuant to § 587.201, is null and void and shall not be the basis for the assertion or recognition of any interest in or right, remedy, power, or privilege with respect to such property or interest in property." *Id.* § 587.202(a); *see also id.* §§ 587.311-.312 (defining "property," "property interest," and "transfer"). Due to these sanctions, U.S. entities have been prohibited from providing goods or services to, or for the benefit of, Kiriyenko without obtaining a license from OFAC. *Id.* § 587.202(a), (c). IEEPA makes it a crime to willfully violate, to willfully attempt or conspire to violate, and to aid and abet the violation of any such prohibitions. *See* 50 U.S.C. § 1705(a), (c).

Appellants did not obtain an OFAC license before providing services to Kiriyenko or leasing the Subject Domain to provide those services to Kiriyenko. JA64 at ¶ 44. As alleged by the Government, the funds used to lease the Subject Domain were paid by the overseas registrar to Verisign for the benefit of sanctioned persons like Kiriyenko. JA99 at ¶ 118. Such registration payments therefore constituted international promotional money laundering—that is, a transfer of funds from outside the United

States to a place within the United States with intent to promote the carrying on of violations of IEEPA. JA54, 99.

The Seizure Warrant ordered Verisign "to redirect the [domain] to substitute servers at the direction of the FBI." JA114 at ¶¶ 154-55; JA120-21. Thereafter, individuals visiting the Subject Domain would be directed not to the servers hosting Appellants' website but to a server controlled by law enforcement, displaying a notice that the domain had been seized. JA114 at ¶ 155.

**D.      Subsequent Sanctioning of Appellant ANO Dialog.**

On September 4, 2024, five days after the Government seized the Subject Domain pursuant to the Seizure Warrant, OFAC added Appellant ANO Dialog to the SDN List. JA394. This designation was based on ANO Dialog's being owned or controlled by, or having acted or purported to act for or on behalf of, directly or indirectly, the Government of the Russian Federation. *Id.* OFAC also designated Tabak, the director of Appellant ANO Dialog. *Id.*

## STATEMENT OF RELATED CASES

The Government is not aware of any other related case or proceeding that is completed, pending, or about to be presented before this Court or any other court or agency, state or federal.

## SUMMARY OF ARGUMENT

This Court should affirm the district court's dismissal of Appellants' motion for return of the Subject Domain because: (1) Appellants lack standing to contest the Government's continued possession of the Subject Domain; (2) the district court did not abuse its discretion in declining to exercise its equitable authority; and (3) an evidentiary hearing is unnecessary.

*First*, Appellants do not have standing to pursue a Rule 41(g) claim because they have no cognizable ownership or possessory interest in the Subject Domain. Appellant Timofey V merely leased the Subject Domain from an overseas registrar, and he was not even the registrant when the Government seized the domain. Even if Appellants had a cognizable interest in the Subject Domain, they would not be lawfully entitled to possess it because the OFAC sanctions block the transfer of any property, including the domain, to Appellants. More generally, Appellants' claims are not redressable, both due to the sanctions and because the Subject Domain would revert to Verisign—not Appellants—if the Government were ordered to return the domain to the entity from which it was seized. Further, there are no applicable IEEPA exceptions or general licenses that would permit the Government or Verisign to transfer the domain to Appellants.

*Second*, the district court acted within its wide discretion not to exercise its equitable authority over Appellants' motion. In deciding whether to entertain a pre-indictment, pre-forfeiture Rule 41(g) motion, courts consider the reasonableness of the Government's actions. Here, strong governmental interests in not letting the Subject Domain be used again to facilitate crime outweigh the interests of Appellants. Appellants also cannot satisfy their proposed four-factor test under *Richey v. Smith*, 515 F.2d 1239 (5th Cir. 1975), because the Government acted within the bounds of the Seizure Warrant and with due regard for the Constitution; Appellants lack a cognizable interest in the domain and are not seriously harmed by its seizure; and Appellants have adequate remedies at law.

*Third*, the district court properly declined to hold an evidentiary hearing because there are no material factual disputes. Appellants have not suggested that Timofey V was the registrant of the Subject Domain at the time of its seizure, and they do not dispute that ANO Dialog is currently sanctioned. Appellants' arguments are purely legal, and they are properly resolved against Appellants on standing grounds and on the merits.

# ARGUMENT

## THE DISTRICT COURT CORRECTLY
## DENIED APPELLANTS' RULE 41(G) MOTION

## Standard of Review

The district court's decision to exercise equitable jurisdiction over a motion for return of property is reviewed for abuse of discretion. *United States v. Chambers*, 192 F.3d 374, 376 (3d Cir. 1999). Likewise, a district court's decision to resolve a Rule 41(g) motion without conducting an evidentiary hearing is reviewed for abuse of discretion. *United States v. Albinson*, 356 F.3d 278, 281 & n.5 (3d Cir. 2004).

"To show an abuse of discretion, appellants must show the district court's action was 'arbitrary, fanciful or clearly unreasonable.' *Stich v. United States*, 730 F.2d 115, 118 (3d Cir.1984). We will not disturb a trial court's exercise of discretion unless 'no reasonable person would adopt the district court's view.' *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir.2000)." *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412 (3d Cir. 2002). "If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 115 (3d Cir. 1976) (en banc).

A determination of whether a party has standing to bring a Rule 41(g) motion is reviewed de novo. *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001). Attendant questions of law raised by the appeal are also reviewed de novo. *See United States v. Nestor*, 2025 WL 32814, at *3 (3d Cir. Jan. 6, 2025) (not precedential; per curiam).

This Court may affirm the district court's ruling on "any ground supported by the record . . . even if the district court overlooked it." *Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 116 (3d Cir. 2020).

## Discussion

Appellant Timofey V and ANO Dialog challenge the district court's denial of their motion for return of property, specifically, the Subject Domain. Their appeal fails for numerous reasons.

### A.    Appellants Lack Standing to Pursue a Rule 41(g) Claim.

To pursue a claim, a party must have standing at all stages in the litigation. The party invoking federal jurisdiction bears the burden of establishing standing. *E.g.*, *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992); *Pub. Int. Rsch. Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997). To establish standing in a Rule 41(g) proceeding, "a claimant must allege a colorable ownership, possessory or security interest in at least a portion of the . . . property." *Rodriguez-*

*Aguirre*, 264 F.3d at 1204 (internal quotations omitted) (quoting *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir. 1998)); *see also United States v. Howell*, 425 F.3d 971, 974 (11th Cir. 2005); *Smith v. United States*, 590 F.2d 304, 305 (9th Cir. 1979) (per curiam). The claimants must also demonstrate their lawful entitlement to the property. *See, e.g.*, *Chambers*, 192 F.3d at 377.

Here, Appellants lack any cognizable interest in the Subject Domain, which they leased for one year, almost 18 months before the Government seized the Subject Domain from a third party. Even if Appellants can establish a cognizable interest in the Subject Domain, they cannot lawfully possess it because the OFAC sanctions block its transfer to Appellants. More generally, Appellants' claim is not redressable because the Government seized the Subject Domain from—and would return it to—Verisign, not Appellants. Finally, none of the sanctions exceptions identified by Appellants are applicable.

### 1. Appellants do not have a cognizable ownership or possessory interest in the Subject Domain.

When the Government seized the Subject Domain from Verisign, Appellants did not own or possess it. A claimant "has no standing to demand the return of that which was seized unless she has a claim of ownership," *Smith*, 590 F.2d at 305, or "some lesser property interest, such

as a possessory interest," *United States v. Cooper*, 485 F. App'x 411, 414 (11th Cir. 2012) (unpublished; per curiam). A possessory interest requires either actual or constructive possession of the property at the time of seizure. *See id.* at 414 (affirming denial of Rule 41(g) motion where claimant "admit[ted] he did not have actual possession of the [property] at the time of [its] seizure" and "did not allege . . . facts demonstrating constructive possession"); *cf. Munoz-Valencia v. United States*, 169 F. App'x 150, 152 (3d Cir. 2006) (not precedential) ("[T]o find the ownership or possessory interest colorable [in the administrative forfeiture context], we have generally required a showing that the claimant independently exercised some dominion or control over the property."). Still, "unexplained naked possession [is] insufficient to establish standing." *Munoz-Valencia*, 169 F. App'x at 152.

Turning first to ownership, it is not enough to simply pay for the use of seized property. In *Cooper*, the Eleventh Circuit affirmed the denial of a defendant's Rule 41(g) motion for the return of two vehicles seized at the time of his arrest in part because he lacked an ownership interest in the vehicles. *See* 485 F. App'x at 414. Although the defendant paid for the vehicles, they were registered under others' names and controlled by others. *See id.*

Here, Appellants never had an ownership interest. At most, they were

temporary lessors of the domain. In their opening brief, Appellants offer

only one reason that Timofey V is the "rightful owner of the website

domain": because he purportedly "purchased the domain name, on

March 1, 2022, paid for it with a Russian bank card which belonged to him,

and . . . used his own passport for the purchase." Br. 7. But *Cooper* makes

clear that merely paying for property is insufficient to establish an

ownership interest. 485 F. App'x at 414. Moreover, in the DNS, registrants

such as Appellant Timofey V do not "own" domain names. As ICANN, the

global coordinating body for the DNS, explains:

> [P]aying to register a domain name is not the same as "buying" it
> outright or permanently. You do not "own" a domain name. What you
> are doing is more like *leasing the domain name from the registry
> operator* that the domain name is associated with. Registration
> periods can vary depending on the registry operator. You cannot buy
> a domain name forever. However, you can continually renew its
> registration (before the registration period expires) to maintain
> control over it. While the term "buying a domain name" is also
> commonly used in relation to purchasing an existing domain name
> registered to someone else, the purchaser is not buying the domain
> name, but just acquiring the rights to register it to themselves and
> continue to manage and re-register it in the future.

*General Questions*, Internet Corp. for Assigned Names and Nos.,

https://www.icann.org/resources/pages/faqs-84-2012-02-25-en

(emphasis added) (last visited Jan. 9, 2026). In other words, paying for a

domain name provides the registrant not with an ownership interest but

with a temporary possessory interest—the right to control the domain name, including by pointing it to the server(s) hosting a website—for the definite term of the registration. Here, Appellants can at most claim that Timofey V "leas[ed] the domain name from the registry operator," Verisign, for the term of a one-year "registration period" that would have ended in March of 2023—well *before* the Seizure Warrant was obtained on August 30, 2024. *Id.*; JA364.

Without an ownership interest, Appellants must establish actual or constructive possession (*i.e.*, dominion or control) of the Subject Domain when the Government seized it. *Cooper*, 485 F. App'x at 414. But Appellants cannot even show an active registration at the time of seizure, even when viewed in the light most favorable to Appellants. *See, e.g.*, *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (standard for motion to dismiss).

The information in the record only indicates that Timofey V registered the Subject Domain for a one-year period in March 2022, which would have expired in March 2023. JA10 at ¶ 26; JA356 at ¶¶ 3-4; JA364. Without an active registration for the Subject Domain at the time of the seizure, Appellants could not exercise dominion or control over the domain, which would have remained with the overseas registrar and the registry,

Verisign. Appellants' Rule 41(g) motion even recognized that the Subject Domain "was and remains registered with VeriSign Global Registry Services" and "will remain under the control of U.S.-based registries and registrars regardless of its operational status." JA20 at ¶¶ 91-92.

Appellants also claim that Timofey V attempted to re-register the Subject Domain on December 12, 2024, and March 20, 2025—*after* the Seizure Warrant was executed in September 2024. JA731. There is reason to doubt these claims on their face.[3] And there is no indication in the record that these re-registration attempts were effective in providing Appellants

---

[3] As noted in the Government's motion to dismiss, even the documents asserting ownership and/or possession from March 2022 through March 2023 fail to establish a colorable claim at that time. For example, the proof of purchase attached to the Rule 41(g) motion is in English, JA364, but the purported registrar, Reg.Ru, conducts its operations in Russian, and no certified translation was provided. The receipt lacks any indicia on its face that it relates to Timofey V, despite Appellants' unsupported claim that Timofey V's purchase was "open and identifiable." JA11 at ¶ 33. The purported receipt identifies the account login as "protestfm" and the customer as "individual" and then twice lists the payment method generically as "bank card." JA364. It provides no evidence that Timofey V is the "individual" who paid for the Subject Domain.

In response, Appellants offered a new document—one that was not a business record generated in the ordinary course of business, was not submitted under penalty of perjury, was written in English with no certified translation and containing typos (e.g., use of the word "registrated"), and provided yet a different name for the alleged registrant ("Timofey Vv" rather than "protestfm"). JA731.

with renewed control over the Subject Domain following the Seizure Warrant's execution. But even assuming—for the purpose of resolving their Rule 41(g) motion—that Appellants controlled the Subject Domain on these dates, they have not asserted a possessory interest *at the time of seizure*, which is what they would need to show to establish standing. *See, e.g.*, *Cooper*, 485 F. App'x at 414.

For these reasons, even accepting Appellants' factual claims about the registration of the Subject Domain, Appellants cannot establish an ownership or possessory interest in the domain at the time of its seizure.

### 2. Sanctions prohibit Appellants from lawfully possessing the Subject Domain.

Even if Appellants could establish a cognizable interest in the Subject Domain, they cannot lawfully possess it due to the OFAC sanctions. "Generally, a Rule 41(g) motion will be denied if the claimant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture or the government's need for the property as evidence continues." *United States v. Approximately $16,500.00 in U.S. Currency*, 113 F. Supp. 3d 776, 780 (M.D. Pa. 2015) (internal quotations omitted) (quoting *Chambers*, 192 F.3d at 377).

The sanctions block the transfer of any interest—including possession of the Subject Domain—to Appellant ANO Dialog or anyone acting on its

behalf, such as employee Timofey V. "When OFAC designates persons under executive orders like Executive Order 14024, they are added to the [SDN List], and all their assets in the United States or under the control of any person who is in the United States are 'blocked,' or effectively frozen." *Diegelmann v. Yellen*, 2024 WL 4880468, at *2 (D.D.C. Nov. 25, 2024) (internal quotations omitted) (quoting *Zevallos v. Obama*, 793 F.3d 106, 110 (D.C. Cir. 2015)). "And Department of Treasury regulations bar the 'provision of funds, goods, or services by, to, or for the benefit of any person' designated as an SDN, unless OFAC licenses the transactions." *United States v. $6,999,925.00 of Funds Associated with Velmur Mgmt. Pte Ltd*, 368 F. Supp. 3d 10, 15 (D.D.C. 2019) (quoting 31 C.F.R. § 544.201(b)); *accord* 31 C.F.R. § 587.202(c).

Here, Appellants do not dispute that Appellant ANO Dialog is on the SDN List. *See* Br. 3-4. They also admit that Appellant Timofey V is "employed by Dialog," JA9 at ¶ 24, and that the "actual management of the project [associated with the Subject Domain] was exercised by Dialog," JA12 at ¶ 43. The Subject Domain is currently controlled by the FBI and would revert to Verisign—also in the United States—if the FBI were ordered to return the domain to the entity from which it was seized. Therefore, as the district court concluded, any transfer of the Subject Domain to

Appellants from the FBI or Verisign in United States is "blocked and effectively frozen," and Appellants "are legally prohibited from gaining control over, or using, [the Subject Domain] absent a license from OFAC—which they have not, to date, obtained." JA734 (internal quotations omitted).[4]

Appellants misunderstand the limited but determinative role of the OFAC sanctions. The thrust of their argument is that (1) Appellant Timofey V is the "rightful owner" of the Subject Domain because he has "never been designated as an SDN," Br. 7, and (2) the designation of Appellant ANO Dialog—after the Seizure Warrant was obtained on August 30, 2024—"cannot justify the seizure," *id.* at 9. Both contentions miss the mark, as Appellants seem to acknowledge. *First*, Timofey V's absence from the SDN

_____

[4] The district court's order appears to include a typographical error, stating that OFAC added ANO Dialog and one of its directors to the SDN List in September "2022," citing to a press release dated "September 4, 2022." JA734. In fact, the designation was made, and that press release was issued, on September 4, 2024. *See* https://home.treasury.gov/news/press-releases/jy2559. But the court's conclusion was correct: as of this time, as the court stated: "under the Executive Order and subsequent SDN List designation, Petitioners' control of 'waronfakes.com' is 'blocked' and 'effectively frozen,' *Diegelmann*, 2024 WL 4880468, at *8, meaning that they are legally prohibited from gaining control over, or using, it absent a license from OFAC—which they have not, to date, obtained. . . . And without the ability to lawfully control or use the domain name, it therefore follows that Petitioners cannot presently establish their lawful entitlement to it pursuant to Rule 41(g)." JA734.

List is irrelevant to whether he is the "owner" of the domain (which he is not). Appellants appropriately highlight the "distinction between blocked property and seized property" and recognize that OFAC sanctions do not affect who holds title to property. *See id.* at 9-10. *Second*, the seizure was executed solely under the authority of the Seizure Warrant based on the nexus between the property and violations of criminal money laundering and trademark laws; nothing was seized by operation of OFAC sanctions themselves. Appellants seem to acknowledge that distinction, noting that OFAC sanctions "do[] not constitute a seizure and [are] not tantamount to a forfeiture." *Id.* at 11.

Appellants' argument on this point also seems to confuse two different sets of OFAC sanctions: the March 2, 2021, designation of Kiriyenko, which preceded the seizure; and the September 4, 2024, designation of Appellant ANO Dialog, which came afterward. The designation of Kiriyenko lies at the heart of the Seizure Warrant: it meant that transactions conducted for the benefit of Kiriyenko would constitute IEEPA offenses; that certain transactions intended to promote such IEEPA offenses could be prosecuted as international promotional money laundering offenses; and that property involved in such money laundering

offenses was subject to seizure and forfeiture. Appellants, in their brief, entirely overlook the basis of the seizure in this case.

The subsequent designation of Appellant ANO Dialog, by contrast, has nothing to do with the original seizure or the legal basis for forfeiture. It does, however, *prospectively* bar ANO Dialog and its employee, Timofey V, from receiving the Subject Domain. *See* 31 C.F.R. § 587.202(a) ("[A]ny transfer *after the effective date* that is in violation of any provision of this part or of any regulation . . . is null and void . . . ." (emphasis added)). Appellants are therefore analogous to someone who may have legally been entitled to possess a firearm at the time of a law enforcement seizure, but who was subsequently convicted of a felony. *Cf. United States v. Roberts*, 322 F. App'x 175, 176-77 (3d Cir. 2009) (not precedential) (affirming denial of Rule 41(g) motion for return of firearms to convicted felon who was not a felon when the Government seized the property). Even if Appellants were not legally prohibited from possessing the Subject Domain when it was seized, they are now.

Accordingly, Appellants misread *Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965 (9th Cir. 2012), for the proposition that "actions preceding [OFAC] designation cannot be retroactively justified by subsequent designation." Br. 8-9, 17. *Al Haramain* only considered

OFAC's blocking of assets that had *not* been seized pursuant to a warrant. Here, the Government seized the Subject Domain under the Seizure Warrant, which established probable cause based on criminal violations wholly independent of OFAC's designation of Appellant ANO Dialog five days later.

### 3. Appellants' claim is not redressable.

Apart from the standing requirements specific to Rule 41(g), Appellants lack standing because the district court cannot redress their claims due to the OFAC sanctions and the seizure of the Subject Domain from a third party. *See, e.g.*, *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) ("To establish [standing], a plaintiff must show three elements: injury-in-fact, causation, and redressability.").

*First*, the sanctions provide that *any* transfer of *any* interest to Appellants—even a transfer ordered by a court—will be "null and void" while ANO Dialog is on the SDN List. 31 C.F.R. § 587.202(a); *see also OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, 2022 WL 611563, at *3 (D. Del. Mar. 2, 2022) ("Any transfers of blocked property that occur in violation of OFAC regulations will be deemed to have no legal effect."). The OFAC regulations applicable to Appellant ANO Dialog expressly provide that "any attachment, judgment, decree, lien, execution, garnishment, or

other judicial process is null and void with respect to any property or interest in property blocked pursuant to [31 C.F.R.] § 587.201," unless licensed by OFAC. 31 C.F.R. § 587.202(f). Accordingly, a judgment in favor of Appellants would be "null and void" with respect to the Subject Domain.

*Second*, even if the judgment were enforceable, resolving the Rule 41(g) motion in favor of Appellants would not provide their requested remedy. "Rule 41(e) provides for one specific remedy—the return of property." *United States v. Bein*, 214 F.3d 408, 415 (3d Cir. 2000).[5] Appellants have offered no evidence that they are the current registrants of the Subject Domain. Their requested relief—"that the government shall release the [Subject Domain] to Petitioners forthwith," JA21—cannot be accomplished without the district court also ordering both Verisign and the Russia-based registrar to register the Subject Domain to Appellants, perhaps even without payment. Because the Government seized the Subject Domain from Verisign, "returning" it would simply authorize Verisign to permit the overseas registrar to re-register the Subject Domain. Granting Appellants' request to "release" the Subject Domain to *them* would amount

---

[5] "Fed. R. Crim. P. 41 was amended in 2002 . . . . As a result of the 2002 amendments, the previous Fed. R. Crim. P. 41(e) now appears with minor stylistic changes as Rule 41(g). For consistency, [this Brief] will refer only to Fed. R. Crim. P. 41(g) even though . . . most of the relevant case law refers to the previous rule." *Albinson*, 356 F.3d at 279 n.1.

to the court ordering specific performance by the overseas registrar for the benefit of a non-U.S. person.

Appellants essentially seek a court-ordered windfall. Their claim is no different from that of someone who rents a car for a day, robs a bank that afternoon, drives away in the car, and later files a motion to "return" the car to him from the police impound lot. The bank robber had a possessory interest in the car during the term of his rental, but that interest expired when his rental did. If the police were to return the car to anyone, it would be to the rental car company. Ordering the police to "release" the car to the robber would give him possession of the car without having to sign a rental agreement or pay the rental company.

### 4.   No exceptions to the sanctions apply.

One of Appellants' primary arguments on appeal is that the OFAC sanctions do not block the transfer of the Subject Domain to Appellants because either (1) the Subject Domain falls under IEEPA's statutory exception for "information or informational materials" or (2) such transfer is authorized by one of OFAC's general licenses. Br. 11-16.

As a threshold matter, Appellants have waived both arguments, because they did not raise them before the district court. *E.g.*, *United States v. Dupree*, 617 F.3d 724, 727 (3d Cir. 2010) (recognizing the "well-

established proposition that arguments not raised in the district courts are waived on appeal").

Both arguments also fail on the merits. *First*, the Subject Domain does not constitute "information or informational materials" that would fall within IEEPA's carve-out. *See* 50 U.S.C. § 1702(b)(3); Br. 11-13. Appellants argue that the Subject Domain "contains news about current events," and therefore that the Government impermissibly restricted information and informational materials when it "seized [the Subject Domain] pursuant to Executive Order 14024." Br. 14. Setting aside that the domain was not "seized" under the sanctions, as explained above, the Subject Domain does not "contain[]" news or other information. A domain name merely points to the IP address of a computer that can host news and other information. *See* JA51 at ¶ 12. Here, when the Government seized the Subject Domain, it did not touch the information on the server(s) associated with the Subject Domain at the time. Nor did the Government restrict Appellants from hosting the same exact information—on any computer—and registering another domain name in a way that does not violate U.S. law to resolve to such host computer(s). So, even if Appellants' "*website* publishes news articles," Br. 14 (emphasis added), the corresponding *domain name* does not.

*Second*, OFAC General License 25G does not authorize the transfer of the Subject Domain to Appellants. *See* Br. 15-16. General License 25G authorizes "all transactions ordinarily incident and necessary to the receipt or transmission of telecommunications involving the Russian Federation that are prohibited by the Russian Harmful Foreign Activities Sanctions Regulations," "[e]xcept as provided in paragraph (d)." OFAC Gen. Lic. No. 25G, § (a), https://ofac.treasury.gov/media/933536/ download?inline (last visited Jan. 9, 2026). Appellants omit that paragraph (d) expressly *excludes* from the general license "[a]ny transactions . . . involving . . . [ANO] Dialog," among other sanctioned entities. *Id.* at § (d)(4)(viii).

Because Appellants have no cognizable interest in the Subject Domain, are legally prohibited from taking possession of it, and have not made a claim that the district court can redress, this Court should affirm the dismissal of Appellants' motion on standing grounds.

## B. The District Court Did Not Abuse Its Discretion in Declining to Exercise Its Equitable Authority.

Should the Court conclude that Appellants have standing, it should affirm the district court's decision not to exercise its equitable powers. When, as here, criminal charges have not yet been brought by the Government, a Rule 41(g) motion is treated as a civil proceeding for

equitable relief. *See, e.g.*, *Peloro v. United States*, 488 F.3d 163, 172 (3d Cir. 2007). "It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions." *Douglas v. City of Jeannette*, 319 U.S. 157, 163 (1943). Thus, when no criminal prosecution is pending, "the decision to invoke equitable jurisdiction is highly discretionary and must be exercised with caution and restraint. Such jurisdiction, therefore, is only appropriate in exceptional cases where equity demands intervention." *United States v. Dean,* 80 F.3d 1535, 1542 (11th Cir. 1996) (quoting *In re $67,470*, 901 F.2d 1540, 1544 (11th Cir. 1990)); *see also Hunsucker v. Phinney*, 497 F.2d 29, 32 (5th Cir. 1974) (explaining exercises of equitable jurisdiction to return seized property prior to indictment are "exceptional" and "anomalous."); *In re Search of 4801 Fyler Ave.*, 879 F.2d 385, 389 (8th Cir. 1989) ("These remedies are extraordinary, and they must be used with restraint."). This Court has held that the district court's decision whether to exercise equitable jurisdiction over a pre-indictment, pre-forfeiture Rule 41(g) motion should be guided by the "reasonableness" of the Government's actions. *See United States v. Premises Known as 608 Taylor Ave., Apt. 302, Pittsburgh, Pa.*, 584 F.2d 1297 (3d Cir. 1978) ("*608 Taylor Ave.*"). Nevertheless, a handful of district courts in this Circuit have looked to

*Richey v. Smith*, 515 F.2d 1239 (5th Cir. 1975), which articulates four factors, each of which is also relevant to reasonableness.

Both standards are guided by the principle that district courts should exercise equitable authority only in exceptional cases. Under either standard, the result is the same: the district court did not abuse its discretion in declining to exercise its authority over Appellants' claim.

### 1. The Government reasonably seized and retains the Subject Domain.

The Government's continued interest in retaining the Subject Domain—which was involved in money laundering for the purpose of promoting sanctions violations—outweighs the interests of Appellants, who have no cognizable interest in the property and have not been seriously harmed by its seizure. This Court's articulation of a "reasonableness" principle in *608 Taylor Ave.* has guided most courts in the Circuit when resolving Rule 41(g) motions. *See, e.g.*, *United States v. $40,454 in U.S. Currency*, 469 F. Supp. 1041, 1043-44 (W.D. Pa. 1979); *United States v. Lamplugh*, 956 F. Supp. 1204, 1206-07 (M.D. Pa. 1997); *cf. Gov't of Virgin Islands v. Edwards*, 903 F.2d 267, 273 (3d Cir. 1990) (recognizing that a "reasonableness" standard "comparable" to *608 Taylor Ave.* is appropriate in resolving post-conviction Rule 41(g) motion). Under *608 Taylor Ave.*, the question is whether "the government's retention is unreasonable

considering all circumstances." 584 F.2d at 1304. As part of this inquiry, "the court should carefully balance the citizen's interest in use of his property against the wide-ranging governmental interests in law enforcement." *Id.* at 1303.

To begin with, the Government acted reasonably in not "returning" the Subject Domain to petitioners who have no ownership or possessory interest in the property—unlike the petitioner in *608 Taylor Ave.* As the district court explained in the more closely analogous *United States v. Singleton*, "[t]he denial of petitioner's motion does not cause irreparable injury given that petitioner has no interest in the Property. No injustice is done by refusing to give to petitioner something that is not hers in the first instance." 867 F. Supp. 2d 564, 571 (D. Del. 2012) (denying Rule 41(g) motion for return of a home where claimant's name did not appear on any paperwork for the property).

This case is also distinguishable from the fact pattern sometimes encountered in which the Government's interest in retaining seized property is to preserve it as evidence. In such cases, there may be reasonable alternatives to retaining the property itself. The Court in *608 Taylor Ave.*, for example, remanded the case for consideration of whether the Government's interest in retaining currency seized from an unindicted

party for evidentiary purposes could be "equally well served by the alternatives to holding the money itself," such as photographing the currency. *Id.* at 1304. Similarly, in *United States v. Lamplugh*, the district court found that it was unreasonable for the Government to retain seized currency where it (1) had not filed an indictment or initiated forfeiture proceedings after three years and (2) could maintain the evidentiary value by photographing and cataloging the currency. 956 F. Supp. at 1207-08.

But this Circuit also recognized in *608 Taylor Ave.* that, "[i]f the government asserts other interests, such as needs of the investigation or the possibility of forfeiture, the district court should evaluate whether the retention itself and the length of the retention is reasonable in light of those interests." 584 F.2d at 1304. For example, in an unpublished opinion, one district court in this Circuit found that claimants' interests in the return of currency seized 26 months prior were outweighed by interests of the Government, which had since indicted the claimants and asserted a "continuing interest in the property as evidence and as a potential source to satisfy its outstanding tax liens." *In re 309 Primrose Lane Hanover, Pa. 17331*, No. 1:05-MC-0151, c, at *11 (M.D. Pa. Aug. 13, 2007), *aff'd*, No. 07-3689, 2009 WL 762417 (3d Cir. Mar. 24, 2009).

Here, the Government has not retained the Subject Domain solely for evidentiary purposes. Rather, the Subject Domain facilitated—and was seized as property "involved in"—international promotional money laundering. JA113 at ¶ 152. Among other reasons, the Government has a continuing interest in retaining the domain, pending an indictment or forfeiture, to prevent Appellants and their coconspirators from using it again to promote transactions for the benefit of Kiriyenko in violation of U.S. sanctions. This strong governmental interest cannot be "equally well served" by merely copying the domain registration information for evidence, which would be akin to photographing currency. If control of the Subject Domain is returned to Appellants, they can—and likely will—continue using it in ways that violate U.S. laws.

Nor has the Government unreasonably harmed Appellants' business interests. For almost 18 months before the Government seized the domain, Appellants apparently chose not to re-register it. During that time, however, they assert that the "War on Fakes" project "gained great popularity" in Russia and now boasts "more than 500,000 subscribers in the Telegram channel." JA12 at ¶ 41. The Government has not touched the Telegram channel, and Appellants have not claimed that they are unable to reach waronfakes.com visitors through Telegram instead. *See* JA43.

Appellants also remain free to use a nearly identical domain (say, "waronfakes.ru") to point to servers hosting the same exact website content, so long as the new domain is registered without violating U.S. law.

The Government's criminal investigation remains active. While it is true that the Government has not yet initiated forfeiture proceedings for the Subject Domain, there is no statutory deadline to do so, and the mere passage of time does not render a lawful seizure unreasonable. *See* Br. 9 n.2; JA709 (Appellants complaining of time elapsed since seizure). Courts are clear that there is no bright-line time limit in the reasonableness analysis. For example, complex cases generally justify longer pre-indictment, pre-forfeiture periods. Indeed, even in a simple case involving the seizure of undeclared currency at airport customs, the Supreme Court held that a delay of 18 months between seizure and the initiation of forfeiture proceedings was not unreasonable. *See United States v. $8,850 in U.S. Currency*, 461 U.S. 555, 567-69 (1983). And courts in this Circuit have found even longer delays to be reasonable. *See $40,454 in U.S. Currency*, 469 F. Supp. at 1043-44 (finding "the government's retention of the currency for 29 months prior to indictment and four years before institution of [forfeiture] proceedings"—which themselves were

commenced four months after termination of the criminal proceedings—was reasonable).

Here, the "Doppelganger" investigation is factually complex, especially compared to some of the cases involving currency seizures, which themselves had longer—but reasonable—delays. *Cf., e.g.*, *$8,850 in U.S. Currency*, 461 U.S. at 569. Particularly in light of Appellants' flimsy claim of any ownership or possessory interest in the Subject Domain, the modest passage of time between the seizure of the Subject Domain and the initiation of any forfeiture proceedings or a criminal indictment is not so extreme as to render the Government's continued possession of the property unreasonable.

For these reasons, the Government's continued possession of the Subject Domain—property involved in money laundering and in which Appellants have no cognizable interest—is reasonable, and the district court did not abuse its discretion in declining to exercise its equitable authority.

### 2. The *Richey* factors weigh against exercising equitable authority.

Appellants do not discuss this Court's decision in *608 Taylor Ave.*, yet even under their proposed *Richey* standard, the district court did not

abuse its discretion in declining to entertain the Rule 41(g) motion.[6] Under

*Richey*, a district court must consider: (1) "whether the Government

displayed a callous disregard for the constitutional rights of the movant";

(2) "whether the movant has an individual interest in and need for the

property he wants returned"; (3) "whether the movant would be irreparably

injured by denying return of the property"; and (4) "whether the movant

has an adequate remedy at law for the redress of his grievance." *Ramsden

v. United States*, 2 F.3d 322, 325 (9th Cir. 1993) (citing *Richey*, 515 F.2d at

1243-44). Deciding against the Government under the *Richey* factors is

reserved for the "rare instances where a gross constitutional violation

would otherwise leave the subject of a search without recourse." *Trump v.

United States*, 54 F.4th 689, 697 (11th Cir. 2022). Here, the Government

prevails on each factor.

---

[6] Only two district courts in this Circuit have apparently applied *Richey* to Rule 41(g) motions. *See Manno v. Christie*, 2008 WL 4058016, at *2 (D.N.J. Aug. 22, 2008) (citing *Johnson v. United States*, 971 F. Supp. 862, 866 (D.N.J. 1997)) ("Other District of New Jersey courts have adopted the Fifth Circuit's test for consideration of a motion for return of property prior to the initiation of criminal proceedings."). In resolving a post-indictment but pre-forfeiture Rule 41(g) motion, another district court in New Jersey concluded that *Richey* guides *whether* to exercise equitable jurisdiction, and that the merits of the Government's possession should be addressed under *608 Taylor Ave.*'s reasonableness standard. *Chaim v. United States*, 692 F. Supp. 2d 461, 467-69 (D.N.J. 2010).

*First*, the Government did not display a "callous disregard" for Appellants' constitutional rights. As a threshold matter, the First Amendment likely does not apply to Appellants. "'[T]he people' protected by the Fourth Amendment, and by the First and Second Amendments, . . . refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990). Here, Appellants claim to be "a nonprofit in Russia that is internally focused in its activity on Russia and its citizens," JA7 at ¶ 5, and a Russian journalist working for that Russian entity who used a Russian bank card and his Russian passport to lease the Subject Domain, JA9-10 at ¶¶ 24, 27-28, 32. Far from establishing a connection to the United States, Appellants seem to distance themselves from the United States, emphasizing that "War on Fakes" was not aimed at a U.S. audience and has "not garnered significant attention or visits from the United States." JA13 at ¶¶ 48-49.

But even assuming Appellants enjoy First Amendment protections, they cannot show that the Government violated—let alone acted with callous disregard for—their rights. Contrary to Appellants' assertions, the Government did not seize the Subject Domain "on the basis of the

[website's] publications, rather than any financial activity connected with [the] domain." Br. 15-16. In fact, the affidavit in support of the Seizure Warrant makes clear that the Subject Domain was seized precisely based on "financial activity"—namely, its role in promotional money laundering in furtherance of sanctions violations. JA99 at ¶ 118. To the extent they complain that sanctions limit their speech, "IEEPA is not aimed at expression," and "[n]othing on the face of IEEPA implicates First Amendment rights." *Humanitarian L. Project v. U.S. Treasury Dep't*, 578 F.3d 1133, 1142-43 (9th Cir. 2009).

Moreover, the Government demonstrated due regard for any rights that Appellants might have by submitting a comprehensive affidavit to a U.S. magistrate judge, who found probable cause to seize the Subject Domain. Over 69 pages, supported by 190 pages of exhibits, the affidavit carefully detailed how the 32 seized domains facilitated criminal conduct. This was not a case in which the Government decided to withhold key facts from the magistrate judge or forego a warrant altogether. *Cf. Harbor Healthcare Sys., L.P. v. United States*, 5 F.4th 593, 599 (5th Cir. 2021) (per curiam) (finding callous disregard where government seized privileged material pursuant to warrant but knew that place to be searched would contain privileged material, did not seek express authorization from the

magistrate judge to seize such material, and did not return or destroy material that a filter team identified as privileged after the search); *Ramsden*, 2 F.3d at 325 (affirming district court's finding of callous disregard where "the Government had the opportunity to secure a warrant, [but] simply chose not to").

*Second*, Appellants do not have an "individual interest in and need for" the Subject Domain. For the reasons discussed earlier in this Brief, Appellants lack *any* cognizable ownership or possessory interest in the property. Appellants also have no need for the Subject Domain. As mentioned throughout this Brief, Appellants maintain an active Telegram channel and are free to publish the exact same content using a different domain, registered in a way that does not violate U.S. law. They just cannot use *the* Subject Domain.

*Third*, Appellants are not irreparably injured by the Government's retention of the Subject Domain pending further proceedings. Again, the Government has never limited Appellants' ability to distribute the same content using any other domain or through their Telegram channel.

*Fourth*, Appellants have adequate remedies at law. Naturally, they may challenge the seizure during forfeiture proceedings. *See, e.g.*, *Patel v. United States*, 2019 WL 4251269, at *3 (S.D. Fla. Sept. 9, 2019) (rejecting

argument that petitioner had no current remedy at law to dispute seizure because as long as the Government initiated forfeiture proceedings within a reasonable period of time, an adequate remedy at law existed); *cf. Singleton*, 867 F. Supp. 2d at 571 (explaining "proper avenue" for third-party petitioner to seek return of property subject to criminal forfeiture order is to follow procedures in 21 U.S.C. § 853(n)); *United States v. Raspino*, 295 F. App'x 486, 488 (3d Cir. 2008) (not precedential; per curiam) (describing 21 U.S.C. § 853(n) as "exclusive means by which a third party can assert his interest" in property subject to criminal forfeiture). Here, Appellants' first task is likely to administratively seek the delisting of Appellant ANO Dialog from the SDN List. *See*, *e.g.*, *Diegelmann*, 2024 WL 4880468 at *2, 7 (describing administrative reconsideration and delisting process for OFAC designations and noting "[g]enerally, if OFAC denies a request for reconsideration, the blocked person may challenge that determination under the [Administrative Procedure Act] in federal court" (internal quotations omitted) (quoting *Sulemane v. Mnuchin*, 2019 WL 77428, at *2 (D.D.C. Jan. 2, 2019))).

For all of these reasons, equitable relief was properly denied upon consideration of the *Richey* factors as well, none of which support Appellants' position.

**C.      Remand for an Evidentiary Hearing Is Unnecessary.**

Because there are no material factual disputes, the district court properly declined to hold an evidentiary hearing. A hearing is required "only if needed to determine a disputed issue of fact necessary to the resolution of the [Rule 41(g)] motion." *Peloro*, 488 F.3d at 177 (internal quotations omitted) (quoting *Albinson*, 356 F.3d at 282). "When it is apparent that the person seeking a return of the property is not lawfully entitled to own or possess the property, the district court need not hold an evidentiary hearing." *United States v. Felici*, 208 F.3d 667, 670 (8th Cir. 2000), *abrogated on other grounds by Henderson v. United States*, 575 U.S. 622 (2015). For example, in *Peloro v. United States*, this Court affirmed the district court's decision to resolve a Rule 41(g) motion without a hearing where the movant argued that a hearing was necessary to determine what happened to the property—although she "repeatedly acknowledged in court filings" that the property had been transferred to a trustee more than six years prior. *See* 488 F.3d at 177-78.

For the reasons set forth above, there are no disputed issues of fact necessary to resolution of this motion. Indeed, Appellants do not actually identify any *factual* disputes that would be material to the Rule 41(g) motion. Appellants do not dispute that ANO Dialog is currently on the SDN

List. That designation alone is sufficient to dismiss Appellants' motion, as the district court ruled. Even accepting the facts set forth by Appellants in the light most favorable to them—including that Appellant Timofey V was the registrant of the Subject Domain at the times he claims—Appellants are not entitled to relief. Accordingly, the district court properly dismissed the motion without a hearing.

# CONCLUSION

For the reasons stated above, the Government respectfully requests that the judgment of the district court be affirmed.

Respectfully submitted,

JOHN A. EISENBERG
Assistant Attorney General
National Security Division

*/s Kyle J. Finnegan*
KYLE J. FINNEGAN
Trial Attorney
National Security Cyber Section
D.C. Bar No. 90018587

DAVID METCALF
United States Attorney

ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals

United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-4573

**CERTIFICATION**

1. The undersigned certifies that this brief contains 8,896 words, exclusive of the table of contents, table of authorities, signature block, and certifications, and therefore complies with the limitation on length of a brief stated in Federal Rule of Appellate Procedure 32(a)(7)(B).

2. I hereby certify that the electronic version of this brief filed with the Court was automatically scanned by OfficeScan Real-Time Scan Monitor, version 10.5, by Trend Micro, and found to contain no known viruses. I further certify that the text in the electronic copy of the brief is identical to the text in the paper copies of the brief filed with the Court.

*/s Kyle J. Finnegan*
KYLE J. FINNEGAN
Trial Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that this brief has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

Dennis E. Boyle
Boyle & Jasari LLP
1050 Connecticut Ave, NW
Suite 500
Washington, DC 20036

*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
Assistant United States Attorney

DATED:  January 12, 2026.